**SO ORDERED.**

**SIGNED this 16 day of November, 2005.**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____
**John C. Cook**
**UNITED STATES BANKRUPTCY JUDGE**
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

| | | |
|---|---|---|
| THE GARDEN COMPANIES, INC., | ) | |
| NK LAWN & GARDEN CO., INC., | ) | Case No. 04-15634 |
| | ) | |
| Debtors. | ) | Chapter 11 |
| _____ | | |
| THE GARDEN COMPANIES, INC., | ) | |
| NK LAWN & GARDEN CO., INC., | ) | |
| | ) | |
| Plaintiff. | ) | |
| v. | ) | ADV. 05-1016 |
| | ) | |
| CHS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### M E M O R A N D U M

This adversary proceeding is before the court upon cross motions for summary judgment.

The plaintiffs are The Garden Companies, Inc., and NK Lawn & Garden Co., herein collectively

referred to as the debtor.  The defendant is a creditor, CHS, Inc., a seller of grass seed, which

1

during the ninety-day preference reach-back period made numerous shipments of seed to the

debtor and received numerous checks from the debtor in return.  The addendum to this memo-

randum shows in chronological order all the creditor's seed shipments by date and amount as

well as the checks sent by the debtor to the creditor.  In the case of the checks, the addendum

shows both the date the check was received by the creditor and the date on which the check was

actually paid by the debtor's bank.  The parties agree that, for the purposes of these cross-

motions for summary judgment, the payments made by the debtor as shown in the addendum are

preferences within the meaning of 11 U.S.C. § 547(b) and are avoidable unless they fall within

the contemporaneous exchange exception set out in 11 U.S.C. § 547(c)(1) or the subsequent new

value exception set out in 11 U.S.C. § 547(c)(4).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrog-

atories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The court is not

to "'weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial.'" *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson

v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "A genuine issue for trial exists only when

there is sufficient 'evidence on which the jury could reasonably find for the plaintiff.'" *Id.*

(quoting *Liberty Lobby*, 477 U.S. at 252).

The creditor first contends that the preferential payments in question cannot be avoided

because they are part of a contemporaneous exchange protected by the provisions of § 547(c)(1).

2

That section provides that the trustee may not avoid a transfer to the extent that such transfer was "(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange."  11 U.S.C. § 547(c)(1).

In *Ray v. Security Mutual Finance Corp. (In re Arnett)*, 731 F.2d 358 (6th Cir. 1984), the Sixth Circuit held that the two crucial elements to the establishment of the contemporaneous exchange exception are (1) that the parties must intend that the exchange be substantially contemporaneous and (2) that it must in fact be so.  *Id.* at 362.  It found that the purpose of the statute was to "codify decisions under the old bankruptcy act which had held that, when a cash sale was intended, acceptance of a check instead of cash did not change the character of the transaction, so long as the check was cashed within a reasonable period of time."  *Id.* at 361.

With these principles in mind, the question before the court is whether there is a disputed question of material fact that could affect the outcome of a fact-finder's deliberations on the contemporaneous exchange issue in this case. The parties' intent, which must be mutual for the defense to apply, is a question of fact.  *Creditors' Comm. v. Spada (In re Spada)*, 903 F.2d 971, 975 (3d Cir. 1990).  A fact-finder looking at the addendum schedule of checks and invoices might well conclude that the parties had no intention of executing contemporaneous exchanges. None of the debtor's checks match any of the creditor's invoices and most vary widely in amount.  In fact, the debtor's check payments from June 2, 2004, through July 16, 2004, are in round thousand dollar amounts.  None of the invoices for seed shipments in any proximity to these checks are in round figures, nor are they close in amount.  After July 16, 2004, something

3

apparently changed because the debtor began sending checks that were not in round figures yet were still completely unrelated in amount to the proximate invoices for seed shipments.  The most natural conclusion to be drawn from simply looking at the order of the checks and invoices is that the parties had an open account arrangement and that the debtor's checks were designed to diminish an outstanding account balance rather than to pay for some particular seed shipment.

The debtor's position, solely for the purposes of its motion for summary judgment, seems to be that the parties may have had a discussion in which the creditor "told the Debtor that if it wanted $100,000 worth of goods, Debtor had to make $100,000 of payment towards the old, outstanding indebtedness.  Only then, according to the [creditor], would [creditor] ship additional new goods, and only to the extent of, in this example, the $100,000 received." Memorandum in Support of Debtor's Motion for Summary Judgment at 2.  There is no competent evidence by way of affidavit, admission, deposition, or interrogatory of any such agreement, but in any event the addendum schedule of checks and invoices, with its wide variances, indicates that no such agreement was ever carried out with any exactitude.[1]

On the other side of the equation is an affidavit by Lester Senff, the creditor's controller, who avers that the parties intended that shipments of grass seeds by the creditor to the debtor would be in exchange for "a" payment made at or about the same time.  He does not aver, however, that the parties intended the checks to be in exchange for any particular shipment or shipments, but instead states that the "shipments *on credit* . . . would be in exchange for

---

[1] For the purposes of 11 U.S.C. § 547(c)(1), the date of the receipt of a check by a creditor determines the date of the transfer.  *Brown v. Shell Canada, Ltd. (In re Tenn. Chem. Co.)*, 112 F.3d 234, 238 (6th Cir. 1997).

4

payments . . . at or about the same time." Senff Affidavit ¶ 8 (emphasis added).  Thus this

affidavit, with its reference to shipments on credit, is at least consistent with a situation in which

a creditor requires a debtor to make a payment on the open account balance before it will ship

any further product.

In situations in which a creditor has required a payment on old debt in exchange for a

new shipment of goods, courts hold that the contemporaneous exchange defense does not apply

because the new value has really been given on credit.  *McClendon v. Cal-Wood Door (In re*

*Wadsworth Building Components, Inc.)*, 711 F.2d 122, 124 (9th Cir. 1983) (where debtor was

required to pay past debts before the creditor would make a new shipment, the new "[v]alue was

given only for a future promise to pay" and therefore the contemporaneous exchange defense did

not apply); *accord Official Comm. of Unsecured Creditors v. Seven D. Wholesale (In re*

*Contempri Homes, Inc.)*, 269 B.R. 124, 128 (Bankr. M.D. Pa. 2001); *Sapir v. Keener Lumber*

*Co. (In re Ajayem Lumber Corp.)*, 143 B.R. 347, 351 (Bankr. S.D. N.Y. 1992); *Chemical*

*Separations Corp. v. Rohm and Haas Co. (In re Chemical Separations Corp.)*, 38 B.R. 890, 897

(Bankr. E.D. Tenn. 1984); *Lichtenstein v. Aspect Computer (In re Computer Personalities*

*Systems, Inc.)*, No. Bankr. 01-14231DWS, Adv. 02-0684, 2004 WL 1607005 at * 8-10 (Bankr.

E.D. Pa.  July 2, 2004) , *aff'd* 320 B.R. 812 (E.D. Pa. 2005); *Interex, Inc. v. Virtex (In re Interex,*

*Inc.)*, Nos. 00-10163, 00-5295, 2003 WL 23807973 at * 3 (Bankr. D. Kan. Apr. 16, 2003).

These cases demonstrate that a payment on old debt is not a contemporaneous exchange

for a new shipment, even though the two may coincide in time.  Again, it is a question of intent,

which is always a question of fact.  For summary judgment to be appropriate, the facts must be

undisputed, yet here, as has been pointed out, the Senff affidavit is equivocal about the parties'

intentions and the schedule of invoices and checks looks like something other than a record of

contemporaneous exchanges. On this uncertain record, the court finds that summary judgment

for the creditor on its contemporaneous exchange defense under § 547(c)(1) would be inappro-

priate. *Lichtenstein v. Aspect Computer (In re Computer Personalities Systems, Inc.)*, 320 B.R.

812, 819 (E.D. Pa. 2005) (denying summary judgment because there was conflicting evidence of

intent).

The creditor's next contention is that most of the payments made to it by the debtor are

not avoidable as preferences because they were followed by seed shipments that represented

subsequent new value given by the creditor.  This defense, commonly called the subsequent new

value defense, is permitted by 11 U.S.C. § 547(c)(4), which provides that a trustee may not avoid

a transfer "to the extent that, after such transfer, [the] creditor gave new value to or for the

benefit of the debtor (A) not secured by an otherwise unavoidable security interest; and (B) on

account of which new value the debtor did not make an otherwise unavoidable transfer to or for

the benefit of such creditor."  Unlike the contemporaneous exchange defense discussed above,

this defense does not contain the element of intention.  Instead, it merely requires that, following

a payment by the debtor, (1) the creditor gave new value to the debtor, (2) the new value was

unsecured, and (3) the debtor, after receiving the new value, did not thereafter make an unavoid-

able transfer to the creditor.  The debtor does not dispute the existence of all these elements, but

argues that a given seed shipment can shelter only the transfer next preceding it.

As is shown by the addendum, all the checks written by the debtor during the preference period were followed and offset to some degree by new seed shipments, except for $ 322,947.42. The running preference analysis column[2] in the addendum is based on the assumption that the creditor was entitled to offset any new value it advanced subsequent to a particular payment against *all* previous preferential payments by the debtor, not just against the immediately preceding payment. That assumption is correct, for the weight of authority is that "an extension of new value need not be directly connected to the preceding preference in order to shelter it." *In re Micro Innovations Corp.*, 185 F.3d 329, 333 (5th Cir. 1999); *accord Crichton v. Wheeling Nat'l Bank (In re Meredith Manor, Inc.)*, 902 F.2d 257, 259 (4th Cir. 1990); *Sloane-Stiver v. Clemens Oil Co. (In re Tower Metal Alloy Co.)*, 193 B.R. 273, 276 (Bankr. S.D. Ohio 1996); *Schilling v. Jackson Oil Co., (In re Transport Assocs., Inc.)*, 171 B.R. 232, 238-39 (Bankr. W.D. Ky. 1994).  It therefore appears that, as to the subsequent new value defense advanced by the creditor, the facts are undisputed and the law is clear that all but $322,947.42 of the debtor's otherwise avoidable transfers may be sheltered by the subsequent shipments of new value made by the creditor.

Because it is undisputed that all the debtor's payments in question were preferential, they are avoidable by the debtor unless some provision of the Bankruptcy Code prevents avoidance. As to the defense asserted by the creditor  under § 547(c)(1), the crucial fact of the parties'

---

[2] Where debtor pays by check, the date of the check's honoring by debtor's bank determines whether the transfer is considered to be within or without the preference period. *Barnhill v. Johnson*, 503 U.S. 393, 399 (1992).  Here, according to the addendum, the first check *paid* by the debtor's bank after June 1, 2005, was check number 916279 in the sum of $200,000. Thus the § 547(c)(4) analysis begins with this check as the first preference.

intention is unclear and disputed and summary judgment for either party is therefore inappropri-

ate.  As to the creditor's defense under § 547(c)(4), the facts are undisputed and the creditor is

entitled to the benefits of this defense as a matter of law to the extent that the creditor is not

successful on its § 547(c)(1) defense.[3]

    An appropriate order will enter in accordance with this memorandum.

###

**ADDENDUM**

---

[3] To the extent that the creditor is successful on its § 547(c)(1) defense, it could not rely on a new value defense.  *See* 11 U.S.C. § 547(c)(4)(B).

| Invoice # | Invoice Date | Amount | Check # | Check Date (Rec'd) | Check Date (Cleared) | Amount | Net Pref |
|---|---|---|---|---|---|---|---|
| | | | 916279 | 5/26/2004 | 06/01/04 | $200,000.00 | $200,000.00 |
| | | | 916281 | 5/27/2004 | 06/01/04 | $75,000.00 | $275,000.00 |
| | | | 916374 | 6/2/2004 | 06/07/04 | $75,000.00 | $350,000.00 |
| 2363 | 06/07/04 | $104,390.95 | | | | | $245,609.05 |
| | | | 916381 | 6/4/2004 | 06/09/04 | $75,000.00 | $320,609.05 |
| | | | 916393 | 6/5/2004 | 06/09/04 | $75,000.00 | $395,609.05 |
| 2364 | 06/14/04 | $8,015.52 | | | | | $387,593.53 |
| | | | 916466 | 6/17/2004 | 06/28/04 | $75,000.00 | $462,593.53 |
| | | | 916469 | 6/19/2004 | 06/28/04 | $25,000.00 | $487,593.53 |
| 2365 | 06/28/04 | $104,702.94 | | | | | $382,890.59 |
| 2366 | 06/30/04 | $80,297.81 | | | | | $302,592.78 |
| 2367 | 06/30/04 | $37,234.40 | | | | | $265,358.38 |
| | | | 916501 | 6/26/2004 | 07/01/04 | $100,000.00 | $365,358.38 |
| 2368 | 07/02/04 | $56,954.17 | | | | | $308,404.21 |
| | | | 916546 | 6/30/2004 | 07/06/04 | $80,000.00 | $388,404.21 |
| | | | 916600 | 7/6/2004 | 07/09/04 | $23,000.00 | $411,404.21 |
| 2369 | 07/09/04 | $34,359.60 | | | | | $377,044.61 |
| 2370 | 07/13/04 | $8,510.78 | | | | | $368,533.83 |
| | | | 916603 | 7/9/2004 | 07/16/04 | $23,000.00 | $391,533.83 |
| 2371 | 07/16/04 | $29,251.97 | | | | | $362,281.86 |
| | | | 916655 | 7/15/2004 | 07/21/04 | $30,000.00 | $392,281.86 |
| 2372 | 07/24/04 | $12,814.10 | | | | | $379,467.76 |
| | | | 916722 | 7/23/2004 | 07/26/04 | $8,948.00 | $388,415.76 |
| | | | 916723 | 7/23/2004 | 07/26/04 | $217.50 | $388,633.26 |
| 2373 | 07/30/04 | $20,721.60 | | | | | $367,911.66 |
| | | | 916882 | 8/2/2004 | 08/06/04 | $20,720.98 | $388,632.64 |
| | | | 916953 | 8/3/2004 | 08/06/04 | $16,294.66 | $404,927.30 |
| | | | 916957 | 8/4/2004 | 08/06/04 | $9,121.15 | $414,048.45 |
| 2374 | 08/06/04 | $872.19 | | | | | $413,176.26 |
| | | | 916956 | 8/3/2004 | 08/09/04 | $31,280.90 | $444,457.16 |
| | | | 916962 | 8/5/2004 | 08/09/04 | $28,829.17 | $473,286.33 |
| 2375 | 08/09/04 | $65,579.57 | | | | | $407,706.76 |
| 2376 | 08/10/04 | $17,243.63 | | | | | $390,463.13 |
| 2377 | 08/13/04 | $2,745.47 | | | | | $387,717.66 |
| | | | 917049 | 8/12/2004 | 08/16/04 | $12,226.29 | $399,943.95 |
| 2378 | 08/20/04 | $4,223.95 | | | | | $395,720.00 |
| 2379 | 08/25/04 | $18,227.95 | | | | | $377,492.05 |
| 2380 | 08/26/04 | $29,679.13 | | | | | $347,812.92 |
| | | | 917203 | 8/25/2004 | 08/27/04 | $12,000.00 | $359,812.92 |
| 2381 | 08/30/04 | $30,850.56 | | | | | $328,962.36 |
| 2382 | 08/30/04 | $6,014.94 | | | | | $322,947.42 |
| Subtotal | in pref. period | $672,691.23 | | | | $995,638.65 | |
| Total 5/04 to | Aug. 04 | $2,282,760.64 | | | | $1,788,887.40 | |
| | | | | | | 100% | $322,947.42 |

9